FILED

DEC 13 2007

DEC 13 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 07 CR 574 |
| v. | ) ) ) | Violations:  Title 18, United States Code, Sections 1341, 1346 and 2 |
| SAVERIO BARONE, also known as Pete Barone, ANTHONY LEE, AMIRALI REHMAT, ZULFIKAR REHMAT, MINAZALI REHMAT, LLOYD LEE, KARL LEE, and KATHREEN JONES | ) ) ) ) ) ) ) ) ) ) ) | **SUPERSEDING INDICTMENT**  JUDGE CASTILLO  MAGISTRATE JUDGE KEYS |

## COUNT ONE

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1.    At times material to this indictment:

### The Victim Companies

a.    The Institute of Gas Technology ("IGT") and Gas Research Institute ("GRI") were both Illinois not-for-profit corporations based in Des Plaines, Illinois.

b.    IGT provided research products and technical services designed to help customers solve environmental and energy problems relating to finding, producing, using, and delivering natural gas.

c.    GRI funded the research at IGT by, among other things, applying for and obtaining research grant monies from public and private entities.  Once research funding had been obtained by GRI from outside sources, IGT personnel would apply to GRI for funding for specified research and development projects.

1

d.    The Gas Technology Institute ("GTI") was created in or about April 2000 when GRI and IGT merged.  After the merger, the funding aspect and research aspects of the two companies were joined such that GTI obtained funding from public and private sources and determined which entities would perform the necessary research (functions previously handled at GRI) and conducted substantive research and contracted with third parties to perform research (functions previously performed at IGT).  GRI, IGT and GTI and their related companies are referred to herein collectively as the "GTI entities" and the "victim companies."

e.    The GTI entities obtained funding from various public and private sources, including grants from the United States Department of Energy ("DoE") and funds for research and development derived from a federally mandated tariff on natural gas pipelines, which tariff was collected and distributed by the Federal Energy Regulatory Commission ("FERC").

f.    The GTI entities conducted certain research and development projects and subcontracted other such projects to third-party companies.  The GTI entities relied on their employees to identify appropriate research and development projects for them to fund, including projects proposed by outside companies, and to review the submissions of these outside companies.  If the GTI entities decided to fund a research project to be conducted by an outside research company, a contract was prepared between the

2

relevant GTI entity and the outside research company pursuant to which the relevant GTI entity made payments to the outside research company for work performed pursuant to that contract.

g.    The GTI entities had several subsidiaries through which they promoted research and development in technologies of interest to the natural gas industry.  Endesco Clean Harbors, LLC ("ECH") and Cement Lock Group LLC were two of these subsidiaries.  ECH was a for-profit company that was in the business of outsourcing research contracts aimed at commercializing the construction and operation of commercial scale waste processing plants based on a process called cement lock technology, which was a process by which waste products, including natural gas industry waste products, were pulverized and then transformed into concrete.  Research projects identified by ECH, including all projects to be performed by outside companies, were approved and funded by IGT and later GTI. ECH was an Illinois business based in Des Plaines, Illinois. Cement Lock Group LLC was an Illinois business based in Mount Prospect, Illinois, that owned rights to the cement lock technology.

## Insider Defendants

h.    Defendant SAVERIO BARONE (a/k/a Pete Barone)("BARONE") was employed by GRI and later GTI and served as an officer of certain of their subsidiaries including ECH.    His positions included GTI's Director of Commercialization and Investments and

3

ECH's President.  In his positions at GRI and later GTI, defendant SAVERIO BARONE had substantial authority to approve funding for research projects to be funded by the GTI entities, including those projects to be subcontracted to outside research companies.

i.    Defendant ANTHONY LEE ("LEE") was employed by GTI as Director of Research.  In this position, defendant LEE identified and approved research projects for GTI, and sought funding approval for these projects from defendant BARONE.

j.    Defendant AMIRALI REHMAT was employed by IGT and later GTI.  He also served as ECH's president.  Defendant AMIRALI REHMAT identified research projects for the GTI entities including ECH. Defendant AMIRALI REHMAT assisted in the preparation of funding proposals for projects at the GTI entities, which proposals were submitted to GRI and GTI.  Defendants BARONE, LEE, and AMIRALI REHMAT are referred to collectively herein as the "insider defendants."

## Outsiders

k.    Defendant ZULFIKAR REHMAT, a resident of Issaquah, Washington, was defendant AMIRALI REHMAT's brother.

l.    Defendant MINAZALI REHMAT, a resident of Canada, was defendant AMIRALI REHMAT's brother.

m.    Individual A was defendant ANTHONY LEE's brother.

n.    Individual B was defendant ANTHONY LEE's daughter.

o.    Individual C was married to Individual B.

4

p.    Individual D was defendant ANTHONY LEE's son.

q.    Individual E was married to defendant ZULIFIKAR REHMAT.

r.    Shyam Singh was vice-president and co-owner of Company A and was president and co-owner of Company B, both of which were Illinois corporations with their principal places of business in Rockford, Illinois.

s.    Individual F was the brother-in-law of Shyam Singh, and owned and operated Company C in Anaheim, California.

### The Scheme

2.    Beginning by at least in or about 1992, and continuing through at least in or about 2002, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere,

> SAVERIO BARONE, also known as "Pete Barone,"
> ANTHONY LEE,
> AMIRALI REHMAT,
> MINAZALI REHMAT, and
> ZULFIKAR REHMAT,

defendants herein together and with Individuals A, B, C, D, Shyam Singh, and persons known and unknown to the Grand Jury (collectively the "co-schemers"), knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the victim companies by means of false and fraudulent pretenses, representations, promises and material omissions, which scheme is further described below.

3.    It was part of the scheme that defendants SAVERIO BARONE, ANTHONY LEE, and AMIRALI REHMAT fraudulently caused GRI, IGT and

5

later GTI to award research contracts and subcontracts, directly
and indirectly, through subsidiaries including ECH, to companies
operated by their relatives and/or associates, namely Individuals
A, B, C, and D, defendants ZULIFIKAR REHMAT and MINAZALI REHMAT,
and Shyam Singh, in exchange for undisclosed kickbacks, namely an
average of approximately 90% of the total amount paid by the victim
companies pursuant to the fraudulent contracts and subcontracts.
As a result of this scheme, the defendants and their co-schemers
misappropriated a total of approximately $7,000,000 from the victim
companies.

4.    It was further part of the scheme that the companies
operated by Individuals A, B, C, and D, defendants ZULIFIKAR REHMAT
and MINAZALI REHMAT, and Shyam Singh, with the approval and
knowledge of the insider defendants, intended to and did perform
little or no work on these contracts and subcontracts.

5.    It was further part of the scheme that the companies
operated by Individuals A, B, C, and D, defendants ZULIFIKAR REHMAT
and MINAZALI REHMAT, and Shyam Singh concealed the failure to
perform work from the victim companies by creating or causing to be
created false documentation and other means.

6.    It was further part of the scheme that the insider
defendants each created and maintained companies for the main
purpose of receiving the proceeds of the scheme and fraudulently
concealing the undisclosed kickbacks, namely:

a.    Defendant BARONE operated Barone & Associates ("B&A"), a sole-proprietorship, and later Barone Consulting Group ("BCG"), an Illinois corporation;

b.    Defendant ANTHONY LEE operated Reaction Kinetics Consultants ("RKC");

c.    Defendant AMIRALI REHMAT operated RESOURCE RECOVERY CONSULTANTS ("RRC").

7.    It was further part of the scheme that the relatives of the insider defendants, either established and operated companies, or operated already established companies, through which they received the proceeds of the scheme and fraudulently concealed their connection to the insider defendants, specifically:

a.    Defendant ZULIFIKAR REHMAT operated ANE Research, Inc. ("ANE") with Individual E in Surrey, British Columbia, Canada;

b.    Defendant MINAZALI REHMAT operated Energy and Environment Monitors, Inc. ("EEM"), Ultra Time Productions, Inc. ("Ultratime"), Ben Visa, and TEFES, from various addresses in Surrey, British Columbia, Canada.

8.    It was further part of the scheme that defendants LEE and AMIRALI REHMAT created and caused to be created research proposals for IGT and later GTI that included research work that they later directed to companies controlled by their co-schemers in order to generate undisclosed kickbacks to themselves and their co-schemers.

9.    It was further part of the scheme that defendant SAVERIO

7

BARONE approved and caused to be approved the fraudulent proposals submitted by defendants ANTHONY LEE and/or AMIRALI REHMAT, which approvals fraudulently induced the victim companies to fund these proposals.

10. It was further part of the scheme that defendants ZULIFIKAR REHMAT and MINAZALI REHMAT, and Individuals A, B, C, and D, submitted and caused to be submitted, on behalf of their respective companies, to the victim companies or one of the victim companies' subsidiary companies, invoices for the research or development work that was the subject of the subcontract, which invoices intentionally inflated the amount of work performed and/or falsely made it appear that work had been performed when, as the co-schemers well-knew, no such work had been performed. .

11. It was further part of the scheme that, in or about October 1999 and continuing through at least in or about December 2000, at the direction of defendant SAVERIO BARONE, Shyam Singh submitted or caused to be submitted to Company D, which had been awarded a $650,000 GRI research contract, fraudulent invoices on behalf of Companies A and B, even though defendant SAVERIO BARONE and Shyam Singh well knew that Companies A and B had performed no work on that contract.    These invoices totaled approximately $280,000.

12. It was further part of the scheme that after Shyam Singh received two checks in payment of these false and fraudulent

invoices, Shyam Singh paid over approximately $260,000 to defendant BARONE. Specifically, Shyam Singh made payments to defendant BARONE in and around March 2000 and another in and about December 2000.

13. It was further part of the scheme that, at the direction of Shyam Singh and with the knowledge of defendants SAVERIO BARONE, Individual F submitted or caused to be submitted to Company D, which had been awarded a $650,000 GRI research contract, a fraudulent invoice for $45,000 on behalf of Company C, although Individual F well knew that Company C had performed no work on that contract.

14. It was further part of the scheme that the insider defendants would approve the invoices or otherwise cause to be approved the invoices submitted by defendants ZULIFIKAR REHMAT and MINAZALI REHMAT, and Individuals A, B, C, and D, although they well knew that little or no work had actually been performed.

15. It was further part of the scheme that the insider defendants' false representations caused the victim companies and Company D to pay those fraudulent invoices by sending checks through the United States mail to the companies operated by defendants ZULIFIKAR REHMAT and MINAZALI REHMAT, Shyam Singh, and Individuals A, B, C, D, and F.

16. It was further part of the scheme that after the companies operated by defendants ZULIFIKAR REHMAT and MINAZALI

9

REHMAT, Shyam Singh, and Individuals A, B, C, D, and F were paid by the victim companies and/or Company D for work that the co-schemers falsely represented had been performed, defendants ZULIFIKAR REHMAT and MINAZALI REHMAT, Shyam Singh, and Individuals A, B, C, D, and F, would provide an undisclosed kickback to the insider defendants.

17.  It was further part of the scheme that between approximately November 1991 up to at least December 2002, defendants caused the victim companies to pay the following amounts, in addition to the amounts paid through Company D, to the following entities as part of this scheme:

a.  approximately $1,700,000 to Individual A's company;

b.  approximately $2,259,000 to Individual B and C's companies;

c.  approximately $1,249,000 to defendant ZULFIKAR REHMAT's ANE Research Company;

d.  approximately $2,070,000 to defendant MINAZALI REHMAT'S EEM, Ben Visa, Ultratime, and TEFES companies; and

e.  approximately $176,000 to Individual D's companies.

18.  It was further part of the scheme that defendants ZULIFIKAR REHMAT and MINAZALI REHMAT, Shyam Singh, and Individuals A, B, C, D, and F paid undisclosed kickbacks to the insider defendants of approximately $7,000,000.

19.  It was further part of the scheme that defendants SAVERIO BARONE, ANTHONY LEE, and AMIRALI REHMAT, together with defendants

10

ZULIFIKAR REHMAT and MINAZALI REHMAT, Shyam Singh, and Individuals A, B, C, D, and F, did misrepresent, conceal, hide and caused to be misrepresented, concealed, and hidden acts done in furtherance of the scheme and the purposes of those acts, including concealing the kickbacks to the insider defendants and the connection that the insider defendants had to defendants ZULIFIKAR REHMAT and MINAZALI REHMAT, Shyam Singh, Individuals A, B, C, D, and F, and the companies that they operated.    As part of the fraudulent concealment, defendants SAVERIO BARONE, ANTHONY LEE, and AMIRALI REHMAT falsely certified to the victim companies that they had no conflicts of interest relating to their responsibilities at the victim companies and their subsidiaries; and Individual F made false representations to a federal law enforcement agent regarding his knowledge of the scheme.

20.    On or about September 5, 2002, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere,

> SAVERIO BARONE, also known as "Pete Barone,"
> ANTHONY LEE,
> AMIRALI REHMAT, and
> ZULFIKAR REHMAT,

defendants herein, and others, for the purpose of executing the above-described scheme and attempting so to do, did knowingly cause to be placed in an authorized depository for mail matter, for delivery by the United States Postal Service, an envelope containing GTI check number 199612 in the amount of $237,700, that

11

envelope being addressed to ANE Research Corp., 6782-178A Street, Surrey, BC V3S9E1, Canada;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWO

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    Paragraphs 1 through 19 of Count One of this Indictment are realleged and incorporated herein as if fully set forth.

2.    On or about September 19, 2002, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere,

> SAVERIO BARONE, also known as "Pete Barone,"
> ANTHONY LEE,
> AMIRALI REHMAT, and
> MINAZALI REHMAT,

defendants herein, and others, for the purpose of executing the above-described scheme and attempting so to do, did knowingly cause to be placed in an authorized depository for mail matter, for delivery by the United States Postal Service, an envelope containing GTI check number 200348 in the amount of $84,000, that envelope being addressed to Energy & Environmental Monitor, 1706 Front Street, Suite 606, Lynden, Washington  98248;

In violation of Title 18, United States Code, Sections 1341 and 2.

13

### COUNT THREE

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.   Paragraphs 1 through 19 of Count One of this Indictment are realleged and incorporated herein as if fully set forth.

2.   At times material to this indictment, defendant KATHREEN JONES, a resident of Bentonville, Arkansas, was defendant ANTHONY LEE'S daughter and was a resident of Norman, Oklahoma.   Defendant KATHREEN JONES operated Almal, Wayne & Associates, and Homatex.

3.   On or about July 11, 2001, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere,

KATHREEN JONES,

defendant herein, for the purpose of executing the above-described scheme and attempting so to do, did knowingly cause to be placed in an authorized depository for mail matter, for delivery by the United States Postal Service, an envelope containing GTI check number 185682 in the amount of $94,500, that envelope being addressed to Wayne & Associates, 4013 Innsbrook Court, Norman, Oklahoma 73072;

In violation of Title 18, United States Code, Sections 1341, 1346 and 2.

14

## COUNT FOUR

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    Paragraphs 1 through 19 of Count One of this Indictment are realleged and incorporated herein as if fully set forth.

2.    At times material to this indictment, defendant KARL LEE, a resident of Downers Grove, Illinois, was defendant ANTHONY LEE'S son.  Defendant KARL LEE operated Ostler and Glenn Valley.

3.    On or about July 27, 2001, at Downers Grove, in the Northern District of Illinois, Eastern Division, and elsewhere,

KARL LEE,

defendant herein, for the purpose of executing the above-described scheme and attempting so to do, did knowingly cause to be placed in an authorized depository for mail matter, for delivery by the United States Postal Service, an envelope containing fraudulent Ostler, Inc. invoice number 72601 requesting payment from MTE in the amount of $63,000, that envelope being addressed to Molecular Thermoengines, 4120 Sherburne Court, Norman, OK, 73072;

In violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## COUNT FIVE

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    Paragraphs 1 through 19 of Count One of this Indictment are realleged and incorporated herein as if fully set forth.

2.    At times material to this indictment, defendant LLOYD LEE, a resident of Norman, Oklahoma, was defendant ANTHONY LEE'S brother.   Defendant LLOYD LEE operated Molecular Thermoengines in Norman, Oklahoma.

3.    On or about November 2, 2001, at Des Plaines, in the Northern District of Illinois, Eastern Division, and elsewhere,

LLOYD LEE,

defendant herein, for the purpose of executing the above-described scheme and attempting so to do, did knowingly cause to be placed in an authorized depository for mail matter, for delivery by the United States Postal Service, an envelope containing GTI check number 188767 in the amount of $97,000, that envelope being addressed to Molecular Thermoengines, Inc., 4120 Sherburn Ct., Norman, OK, 73072-4403;

In violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## FORFEITURE ALLEGATION

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.   The allegations contained in Counts One and Two of this Indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18 United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.   As a result of their violations of Title 18, United States Code, Section 1341, as alleged in the foregoing Indictment,

> SAVERIO BARONE, also known as "Pete Barone,"
> ANTHONY LEE,
> AMIRALI REHMAT,
> MINAZALI REHMAT, and
> ZULFIKAR REHMAT,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and  Title 28, United States Code, Section  2461(c), any and all right, title, and interest they may have in any property involved in the charged offenses.

3.   The interests of the defendants subject to forfeiture pursuant to Title 28, United States Code, Section 2461(c), include properties, vehicles, and other items purchased with proceeds obtained as a result of defendants' involvement in the charged offenses.

4.   If any of the forfeitable property described above, as a result of any act or omission by the defendants:

> (a) Cannot be located upon the exercise of due

17

diligence;

       (b)   Has been transferred or sold to, or deposited with, a third party;

       (c)   Has been placed beyond the jurisdiction of the Court;

       (d)   Has been substantially diminished in value; or

       (e)   Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____
UNITED STATES ATTORNEY

18